**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| SPACE SHIPPING LTD. | CIVIL ACTION |
| Plaintiff | |
| versus | NO. |
| ST SHIPPING & TRANSPORT PTE LTD., | SECTION |
| ST SHIPPING & TRANSPORT INC. and | |
| GLENCORE INTERNATIONAL AG | JUDGE |
| Defendants | MAGISTRATE |

**VERIFIED COMPLAINT**

Plaintiff Space Shipping Ltd. ("Plaintiff" or "Space Shipping") files this Verified Complaint against Defendants ST Shipping & Transport Pte Ltd. ("ST Shipping Pte"), ST Shipping & Transport Inc. ("ST Shipping Inc.") and Glencore International AG ("Glencore International," and together with ST Shipping Pte and ST Shipping Inc., the "Defendants"), and alleges upon information and belief as follows:

**Subject Matter Jurisdiction**

1.     This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

**Parties**

2.     At all times relevant to this action, Plaintiff Space Shipping was, and still is, a foreign corporation duly organized and operating under the laws of Malta, with a place of business at Old Bakery Street 198, VLT Valletta, Malta.

3.     Defendant ST Shipping Pte is a company organized and existing under the laws of Singapore, with a registered office at 1 Temasek Avenue, #34-01 Millenia Tower, Singapore 039192.

4.     ST Shipping Pte is a wholly-owned subsidiary of Glencore International.

5.     Upon information and belief, Defendant ST Shipping Inc. is a company organized and existing under the laws of Switzerland, with a registered office at Baarmermattstrasse 3, PO Box 660, Baar, Switzerland.

6.     Upon information and belief, Glencore International is a company organized and existing under the laws of Switzerland, with a registered office at Baarmermattstrasse 3, CH-6341 Baar, Switzerland.

7.     ST Shipping Inc. is a wholly-owned subsidiary of Glencore International.

8.     Upon information and belief, at all relevant times ST Shipping Pte, ST Shipping Inc., and Glencore International had common officers, directors, office space, contact information, and ownership, intermingled corporate resources, disregarded corporate separateness and form, and operated as alter egos of one another such that they should be treated as a single entity for the purpose of the requested attachment.

2

## **FACTS**

### **The Charter**

9.      By charter dated April 10, 2014 (the "Charter"), Space Shipping, as owners of the motor vessel *CV Stealth* (the "Vessel"), chartered the Vessel to Defendant ST Shipping Pte as the Charterers for approximately twelve months at the hire rate of $14,500 per day. Attached hereto as Exhibit 1 is a true and correct certified copy of the Charter.

10.     The Charter is subject to English law. *See* Ex. 1, §41(a).

11.     The Charter contains a mandatory arbitration clause calling for the arbitration of "any dispute" arising under the Charter before the London Maritime Arbitrators Association. *Id.*, §§41(b), 111(a).

12.     Briefly, ST Shipping Pte, as head charterer, ordered the Vessel to carry a cargo of up to 400,000 barrels of Venezuelan crude oil purportedly sourced from Petróleos de Venezuela, S.A. ("PDVSA"), the Venezuelan state-owned oil and natural gas company, from Puerto La Cruz, Venezuela for discharge at a United States terminal.  The Vessel proceeded to Puerto La Cruz, arriving September 5, 2014, but it quickly emerged that the crude oil cargo was not authorized by PDVSA for sale, was not scheduled to be loaded, and was being stolen from PDVSA.

13.     On September 13, 2014, the Vessel was boarded by Venezuelan port authorities, members of the National Guard, government lawyers, security officers from PDVSA, the Harbor Master, and customs officers.  They informed the master that the purported authorization document was not an official PDVSA document.

3

The Vessel was detained in Venezuela at that time, and remains there through the date hereof.

**The London Arbitration**

14.     Space Shipping and Defendant ST Shipping Pte have arbitrated the claims under the Charter in London in accordance with the terms of the Charter (the "London Arbitration").

15.     While the London Arbitration is ongoing, it has resulted in the issuance of a series of awards in favor of Space Shipping, against ST Shipping Pte.

16.     By Partial Final Award dated September 23, 2015 (the "Partial Final Award"), the arbitrator concluded that Space Shipping, as owner, was entitled to indemnity under the Charter with ST Shipping Pte because the Vessel's detention in Venezuela was caused by the charterers' acts. The arbitrator ordered that ST Shipping Pte pay to Space Shipping various sums under the Charter, subject to a further arbitration award resolving certain other claims and counterclaims. Attached hereto as Exhibit 2 is a true and correct copy of the Partial Final Award.

17.     By Fourth Partial Final Award dated May 25, 2017 (the "Fourth Partial Final Award"), ST Shipping Pte's liability was quantified and it was ordered to pay Space Shipping $4,527,150.58 for Space Shipping's indemnity claim for bareboat hire, plus interest, and an additional $2,950,880.30 in operational costs incurred by Space Shipping (for a total of $7,478,030.88). Attached hereto as Exhibit 3 is a true and correct copy of the Fourth Partial Final Award.

4

18.     The Court is respectfully referred to the Partial Final Award and the Fourth Partial Final Award for the detailed facts surrounding Space Shipping's claim for breach of Charter, and Defendant ST Shipping Pte's liability therefor.

19.     The London Arbitration has resulted in unambiguous findings of liability by ST Shipping Pte to Space Shipping.

20.     In total, ST Shipping Pte, and such alter ego entities as might be identified, owe Plaintiff $7,478,030.88 under the Fourth Partial Final Award (the "Awarded Amount").

21.     Plaintiff is seeking to recover the Awarded Amount via an enforcement action in Connecticut.

22.     In addition to the Awarded Amount, ST Shipping Pte, its alter ego ST Shipping Inc., and Glencore International (as either an alter ego or as guarantor of the Charter) are liable for an additional $5,029,400 in unpaid hire through September 31, 2017, a further $928,886.84 in operational expenses, and an estimated $1,400,000 in drydocking costs, in the amount of $7,358,286.84 plus interest, attorneys' fees and costs, for a total of **$9,135,612.74** (the "Additional Amount," further defined *infra* at ¶90.

23.     These amounts are being sought in the London Arbitration and are recoverable under the Charter.  This action seeks to secure Plaintiff's claims for the Additional Amount.

**Alter Ego Allegations**

24.     Defendants   ST   Shipping   Pte,   ST   Shipping   Inc.,   and   Glencore International   have   so   blurred   the   lines   between   their   purportedly   separate existences that they should be treated as alter ego entities.

25.     ST Shipping Pte and ST Shipping Inc. are under common ownership, with both wholly owned by Glencore International.

26.     But for their suffixes (*i.e*, "Pte" versus "Inc.") ST Shipping Pte and ST Shipping Inc. have identical names.

27.     Upon information and belief, ST Shipping Pte, ST Shipping Inc., and Glencore International share common offices at:

> a.  1 Temasek Avenue
>     34-01
>     Millenia Tower
>     Singapore
>     039192
>
> b.  Three Stamford Plaza
>     301 Tresser Boulevard,
>     Stamford, Connecticut 06901-3244
>
> c.  Baarmermattstrasse 3
>     PO Box 660
>     Baar, Switzerland

28.     Internet searches for "ST Shipping & Transport Pte" and "ST Shipping & Transport Inc" reveal no dedicated website for either entity, their only Internet presence being inclusion on the Glencore website.

29.     The office locations for Glencore International are identical to the addresses associated with ST Shipping Pte and ST Shipping Inc.

30.     Glencore International and ST Shipping Inc. share common management. Upon information and belief, Steven Kalmin is the Chief Financial Officer of Glencore International.  Mr. Kalmin is also a Director of ST Shipping Inc.

31.     Additionally, upon information and belief, Andreas Hubmann is the Accountant for Glencore International. Mr. Hubmann is also a Member of the Board of Glencore International AG. Mr. Hubmann is also the Chairman, Managing Director, and President of ST Shipping Inc.

32.     Upon information and belief, Glencore International at all relevant times dominates, controls, and directs the activities of ST Shipping Pte and ST Shipping Inc.

33.     ST Shipping Pte and ST Shipping Inc. share a common fax number.

34.     ST Shipping Pte and ST Shipping Inc. also share common Officers and Directors, including Richard William Dumpleton, Angus Robert Marsham Paul, and Mark Jonathan Catton.

35.     Upon information and belief, ST Shipping Pte and ST Shipping Inc. also share employees, including Matthew Maciejewski, Alex Schulten, and Marcus Souza.

36.     Upon information and belief, ST Shipping Pte and ST Shipping Inc. receive and share funds and corporate resources with each other and with Glencore International without regard for corporate separateness or form.

37.     In sum, ST Shipping Pte and ST Shipping Inc. operate interchangeably to achieve the business objectives of their common owner, Glencore International,

which completely dominates and controls both ST Shipping Pte and ST Shipping Inc. such that they should not be treated as separate entities.

38.    Glencore International publicly holds itself out as operating a shipping fleet, without reference to the putative use of subsidiaries.

39.    In the matter at hand, communications directly with "ST Shipping" surrounding the operation of the Vessel under the Charter show that ST Shipping Pte, ST Shipping Inc., and Glencore International (as well as certain of its other subsidiaries) operated interchangeably at all operative times.

40.    In fact, prior to the finalization of the Charter between Plaintiff and ST Shipping Pte, Plaintiff understood that Glencore International was the charterer.  It was only at the last minute that ST Shipping Pte was substituted as charterer, with Glencore International guaranteeing ST Shipping Pte's performance.

41.    A further example of the functional interchangeability of Defendants is an email dated August 4, 2012 (the "August 4 Email"), from Rikke Clausen of Arrow Tankers A/S (Defendants' chartering agent) to GEDEN – ANKER CHARTERING (Subject: MT CV Stealth / ST Shipping and Transport Pte Ltd TCP: 10-Apr-2014 [ 7 Days Firm Notice of Delivery ]) attaching several documents that the Charterers requested be passed on to the Vessel's master. Attached hereto as Exhibit 4 is a true and correct copy of the August 4 Email.

42.    Among the documents attached to the August 4 Email was one titled "ST Global Ops.xls" (the "ST Global Ops Document") which bears a logo stating "ST

PD.22535889.1

Shipping and Transport." Attached hereto as Exhibit 5 is a true and correct copy of the ST Global Ops Document.

43.     The ST Global Ops Document contains three columns, entitled "London Office, UK," "Singapore Office, Singapore," and "Stamford Office, USA." *Id.* Below each column are the names of and contact information for certain individuals. *Id.*

44.     In the "Stamford Office, USA" column is listed Matthew Maciejewski, "Office: +1 203 328 2484" and "Email: matthew.maciejewski@stshipping.com." The Global Ops Document does not state Mr. Maciejewski's title and does not indicate whether Mr. Maciejewski works for ST Shipping Pte or ST Shipping Inc. or some other entity. *Id.*

45.     An internet search for "Matthew Maciejewski" and "ST Shipping" leads to a LinkedIn profile indicating Mr. Maciejewski works in "Vessel Operations" for "Glencore" in Stamford, CT, from 2008. Attached hereto as Exhibit 6 is a copy of the Linkedin profile for Mr. Maciejewski.

46.     Also listed on the ST Global Ops document for the Stamford Office is Alex Schulten (alex.schulten@stshipping.com). *See* Ex. 5. The ST Global Ops Document does not state Mr. Schulten's title and does not indicate which "ST Shipping" or other entity Mr. Schulten works for. *See id.*

47.     Marcus Souza (marcus.souza@stshipping.com) is also listed in the ST Global Ops Document. *See* Ex. 5. Similarly, the Global Ops Document does not provide Mr. Souza's title, nor reveal whether Mr. Souza works for ST Shipping Pte or ST Shipping Inc. or some other entity.

48.     According to Mr. Souza's LinkedIn profile, he is a "Vessel Operator (ST SHIPPING AND TRANSPORT PTE LTD)" for "Glencore LTD" since 2009. Attached hereto as Exhibit 7 is a copy of the LinkedIn profile for Mr. Souza.

49.     Also revealing is the metadata document information embedded in the ST Global Ops Document, which indicates that the author of that document was "Russel Fernandes" and that it was last modified by "Philip Walsh – pqw." Also embedded in the metadata of the ST Global Ops Document is the information "Company – Glencore UK Ltd". Attached hereto as Exhibit 8 is a true and correct copy of the document information for the ST Global Ops Document.

50.     Upon information and belief, "Russel Fernandes" is the same "Russell Fernandes" who identifies himself as working in "Oil Shipping Operations, London, area, Glencore Xstrata PLC…"[1]

51.     The LinkedIn profile for Mr. Walsh states that he worked as a Freight Operator at Glencore PLC from February 2013 to April 2016. Attached hereto as Exhibit 9 is a copy of the LinkedIn profile for Mr. Walsh.

52.     Also attached to the August 4 Email is a document named "Standing Instruction to Masters 2014-APC – Revision Jan 27.docx" (the "Standing Instructions"). Attached hereto as Exhibit 10 is a true and correct copy of the Standing Instructions.

53.     Notably, the document information imbedded in the Standing Instructions indicates that the author of that document was "Russel Fernandes - rof"

---

[1] *See* www.joesdata.com/executive/russell_Fernandes_2696941176.html (last accessed September 5, 2017).

and that it was last modified by "Marcus Souza - mus." Attached hereto as Exhibit 11 is a true and correct copy of the document information for the Standing Instructions.

54.      Also imbedded in the document properties of the Standing Instructions is the information "Company – Glencore UK Ltd". *See id.*

55.      Section 2.4 of the Standing Instructions identifies the mailing address and telephone numbers "for our worldwide offices." Ex. 11, §2.4. The Standing Instructions do not identify whether the three offices listed are for ST Shipping Pte, ST Shipping Inc., Glencore International, and/or another entity. Three locations are identified:

> *Singapore, Head Office:*
> 1 Temasek Avenue , # 34-01 Millenia Tower,
> Singapore 039192
> Tel: (+65) 6415 7700
> Telex: 264136 SHINC G
> Fax: +44 207 412 3498
>
> *UK, London branch*:
> 50 Berkeley Street,
> London W1J 8HD
> Tel: (+44) 207 412 3354
> Telex: 264136 SHINC G
> Fax: +44 207 412 3498
>
> *USA, Stamford branch*:
> Three Stamford Plaza, 301 Tresser Boulevard,
> Stamford Connecticut 06901-3244
> Tel: (+1) 203 328-4900
> Fax: +44 207 412 3498

PD.22535889.1

56.     Notably, all three locations share a common fax number. The Singapore and London locations also share a common Telex. These all appear to be offices from which ST Shipping Pte, ST Shipping Inc., and Glencore International operate.

57.     Section 5 of the Standing Instructions addresses "Incidental Reporting" and requires that "[a]ny emergency [] be reported to ST Shipping i.e. the relevant Operator(s) and Mike Morris/Capt. Pankaj Sood (contact details listed below)…." *See id.*, §5.

58.     The contact details for Mike Morris are mike.morris@glencore.co.uk; Office: +44 207 412 3515. *See id*. Upon information and belief, Mr. Morris is a Glencore International employee, utilizing a "glencore.co.uk" email extension. Further, Mr. Morris's office number appears nearly identical to the "UK, London branch" number listed in Section 2.4 regarding ST Shipping Pte's "worldwide offices."

59.     The contact details for Captain Pankaj Sood are pankaj.sood@glencore.co.uk, Office: +44 207 412 3311. *See id*. Upon information and belief, Capt. Sood is a Glencore International employee, utilizing a "glencore.co.uk" email extension. Further, Captain Sood's office telephone number appears nearly identical to the "UK, London branch" telephone number listed in Section 2.4 of the Standing Instructions, regarding ST Shipping Pte's "worldwide offices."

60.     Capt. Sood's LinkedIn profile indicates he is a "Manager, Marine assurance/ risk management & projects (Marine) at Glencore International AG,"

since October 2007. Attached hereto as Exhibit 12 is a copy of the LinkedIn profile for Capt. Sood.

61.    The evidence therefore indicates that ST Shipping Pte's Standing Instructions were prepared by Glencore International employees and mandated that vessels chartered by ST Shipping Pte and/or ST Shipping Inc. alert Glencore International of vessel emergencies.

62.    Further communications regarding the Vessel show that Glencore International or a Glencore affiliate, through directions to its subsidiaries ST Shipping Pte and ST Shipping Inc., at all relevant times was actually controlling the Vessel.

63.    Specifically, and remarkably, a Mr. "Matt Ross" issued Voyage Orders dated August 8, 2014 to ST Shipping, requesting such orders be passed to the Owners of the Vessel (the "Voyage Orders Email"). In an email from "Matt Ross/Stamford/glen" to "STShipping Operations/sts@stshipping, Matthew Maciejewski/Stamford/sts@stshipping," (Subject: AMENDMENT 2: VOYAGE ORDERS – CV STEALTH), Mr. Ross relays the following instruction:

> UPON COMPLETION OF LOADING AT BOSTCO, VESSEL TO PROCEED TO AMUAY, VENEZUELA TO DISCHARGE FULL CARGO

Attached hereto as Exhibit 13 is a true and correct copy of the Voyage Orders Email.

64.    Mr. Ross's LinkedIn profile identifies him as a "Trader" with "Glencore" in Stamford CT. Attached hereto as Exhibit 14 is a copy of Mr. Ross's LinkedIn profile.

65.     There is also a LinkedIn profile for "Glencore" in which Glencore describes itself as a "Group" whose "industrial and marketing activities are supported by a global network of more than 90 offices located in over 50 countries." This profile does not distinguish any of the Glencore entities referenced herein and makes clear that the Glencore companies function as a single group. Attached hereto as Exhibit 15 is a copy of Glencore's LinkedIn profile.

66.     The Voyage Orders Email from Mr. Ross copies, *inter alia*, "Greg Durrant/Stamford/glen@glencore,      Ken      Mendoza/Stamford/glen,      Farouk Ayoub/Stamford/glen,      Chelsea      Jaouli/stamford/glen@glencore,      Jinelle Spagnuolo/Stamford/glen@glencore." *See id.*

67.     Consistent with his instructions from Mr. Ross, Mr. Maciejewski forwarded the Voyage Orders to "MT CV STEALTH; GEDEN – TANKER CHARTERING; GEDEN – TANKER" (Subject: Fw: AMENDMENT 3: VOYAGE ORDERS – CV STEALTH) that same day. That email is signed "Matthew Maciejewski, ST Shipping." Attached hereto as Exhibit 16 is a true and correct copy of the voyage orders email from Mr. Maciejewski.

68.     Glencore International, acting through ST Shipping Pte and/or ST Shipping Inc., directed that the Vessel proceed to the Bostco Terminal, and then to Venezuela, pursuant to orders dated August 8, 2014 (the "August 8 Orders").

69.     By email dated September 4, 2014, Mr. Maciejewski provided "Loadport Voyage Orders" which ordered that the Vessel sail to Puerto La Cruz. Attached hereto as Exhibit 17 is a true and correct copy of the September 4 email.

70.     Subsequent to the Vessel's arrest in Venezuela, a Ms. Louise Bullen began communicating with the Vessel's Master, Capt. Ercan. Attached hereto as Exhibit 18 are true and correct copies of emails with Ms. Bullen.

71.     The emails to Capt. Ercan are signed "Louise Bullen, For & on behalf of ST Shipping." *Id.*

72.     Upon information and belief, Ms. Bullen is an English solicitor. An internet search for Louise Bullen indicates she is an employee of Glencore UK Ltd, located at 50 Berkeley Street, London, W1J 8HD, England. Therefore, yet another Glencore entity – Glencore UK Ltd. – appears to have been involved in the operation and management of the Vessel nominally chartered to ST Shipping Pte of Singapore.

73.     The only thing clear about the relationships among ST Shipping Pte, ST Shipping Inc., and Glencore International is that there is significant overlap among those entities with respect to ownership, officers, directors, employees, addresses, phone numbers, fax numbers, e-mail addresses and, crucially, operations.

74.     What is more, the Glencore group of entities operates in a purposefully obfuscatory manner, as evidenced by the absence of a web presence for ST Shipping Pte and ST Shipping Inc., the use of nearly identical names for these entities, and the use of common officers, directors and employees.

**The Rule B Allegations**

75.     After a diligent enquiry, an office for ST Shipping Pte, ST Shipping Inc., or Glencore International could not be located in this district.

76.     After a diligent search, including internet searches of the Glencore website, utilizing the Google search engine, and consulting the website maintained by the Louisiana Secretary of State, none of ST Shipping Pte, ST Shipping Inc., or Glencore International have agents for service of process in this district.

77.     According to the website maintained by the Louisiana Secretary of State, none of ST Shipping Pte, ST Shipping Inc., or Glencore International have registered as foreign corporations registered to do business in Texas.

78.     Accordingly, Defendants cannot be "found" within the district for the purpose of an attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims, and Plaintiff seeks an Order of Attachment against such property, tangible or intangible, of the Defendants as may be found within the District, up to and including the Additional Amount specified in the Verified Complaint.

**<u>Defendants' Assets in the District</u>**

79.     Upon information and belief, Defendants have or soon will have property in this district, consisting of cash, bunkers (fuel), cargo, and other valuable property aboard the motor vessel SAKURA EXPRESS (the "<u>Vessel</u>"), which is present in this district.

80.     According to Lloyd's List Intelligence, a widely-consulted and respected third-party maritime information provider, the Vessel is operated in some manner and/or time chartered by Defendant ST Shipping Inc.

81.     Upon information and belief, the Vessel may be sub-time chartered to Defendant ST Shipping Pte.

82.     Accordingly, Plaintiff respectfully seeks (1) to attach the bunkers and other property aboard the Vessel belonging to Defendant ST Shipping Inc. as charterer; (2) to attach the bunkers and other property aboard the Vessel belonging to Defendant ST Shipping Pte as sub-time charterer; and (3) to serve the draft subpoena attached hereto as Exhibit 19 on the Vessel and her master in order to obtain copies of the applicable charterparty, the load instructions or bills of lading for any cargo aboard or to be laden aboard the Vessel, and other documents at the time the attachment papers are served based on information and belief that such cargo is beneficially owned by Defendant Glencore International.

## AS AND FOR A FIRST CAUSE OF ACTION – ATTACHMENT OF ST SHIPPING PTE PROPERTY

83.     Defendant ST Shipping Pte is obligated under the Charter to pay (in addition to the Awarded Amount, being pursued in other proceedings), the additional $7,358,286.84, plus interest and costs. Though demanded, no part of this sum has been paid.

84.     The Charter is a maritime contract.

85.     In the London Arbitration, Plaintiff Space Shipping is entitled to recover, in addition to the Awarded Amount:

        a.  Principal Hire Claim              $5,029,400

        b.  Principal Opex Claim              $928,886.84

        c.  Estimated drydocking costs        $1,400,000

*Subtotal of Breach of Charter Claim* $7,358,286.84

    d.   Estimated Interest at 8%, 2 years   $1,177,325.90

    e.   Estimated Arbitration costs        $300,000

    f.   <u>Estimated fees & costs</u>          <u>$300,000</u>

    **Total Additional Amount**     **$9,135,612.74**

86.   Defendant ST Shipping Pte cannot be found in this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

87.   Defendant ST Shipping Pte has or will soon have property in this district, consisting of, *inter alia*, cash, bunkers (fuel), cargo, and other valuable property aboard the Vessel

88.   Plaintiff is accordingly entitled to attach Defendant ST Shipping Pte's property within the district.

## AS AND FOR A SECOND CAUSE OF ACTION – ATTACHMENT OF ST SHIPPING INC. PROPERTY

89.   Defendant ST Shipping Inc. is an alter ego of Defendant ST Shipping Pte and is accordingly also liable under the Charter to pay (in addition to the Awarded Amount, being pursued in other proceedings), the additional $7,358,286.84, plus interest and costs. Though demanded, no part of this sum has been paid.

90.   The Charter is a maritime contract.

91.   In the London Arbitration, Plaintiff Space Shipping is entitled to recover, in addition to the Awarded Amount:

    a.   Principal Hire Claim          $5,029,400

    b.   Principal Opex Claim         $928,886.84

c.  Estimated drydocking costs          $1,400,000

*Subtotal of Breach of Charter Claim$7,358,286.84*

d.  Estimated Interest at 8%, 2 years  $1,177,325.90

e.  Estimated Arbitration costs          $300,000

f.  Estimated fees & costs                $300,000

**Total Additional Amount      $9,135,612.74**

92.     Defendant ST Shipping Inc. cannot be found in this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

93.     Defendant ST Shipping Inc has or will soon have property in this district, consisting of, *inter alia*, cash, bunkers (fuel), cargo, and other valuable property aboard the Vessel.

94.     Plaintiff is accordingly entitled to attach Defendant ST Shipping Inc.'s property within the district.

## AS AND FOR A THIRD CAUSE OF ACTION – ATTACHMENT OF GLENCORE INTERNATIONAL PROPERTY

95.     Defendant Glencore International is an alter ego of Defendants ST Shipping Pte and ST Shipping Inc. and is accordingly also liable under the Charter to pay (in addition to the Awarded Amount, being pursued in other proceedings), the additional $7,358,286.84. Though demanded, no part of this sum has been paid.

96.     Defendant Glencore International is also liable under the charter as guarantor.

97.     The Charter is a maritime contract.

98.     In the London Arbitration, Plaintiff Space Shipping is entitled to recover, in addition to the Awarded Amount:

|   | | |
|---|---|---|
| a. | Principal Hire Claim | $5,029,400 |
| b. | Principal Opex Claim | $928,886.84 |
| c. | Estimated drydocking costs | $1,400,000 |
| | *Subtotal of Breach of Charter Claim* | *$7,358,286.84* |
| d. | Estimated Interest at 8%, 2 years | $1,177,325.90 |
| e. | Estimated Arbitration costs | $300,000 |
| f. | Estimated fees & costs | $300,000 |
| | **Total Additional Amount** | **$9,135,612.74** |

99.     Defendant Glencore International cannot be found in this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

100.    Upon information and belief, Defendant Glencore International has or will soon have property in this district, consisting of a property interest in the cargo aboard, or to be laden aboard, and/or other good and valuable property aboard the Vessel.

101.    Plaintiff accordingly respectfully seeks limited discovery to determine whether or not the cargo and/or other good and valuable property aboard the Vessel is owned or controlled by Defendant Glencore International or any related alter ego company by way of a subpoena to be served on the master of the Vessel to obtain a copy of the bills of lading for the vessel's cargo.

102.     Should the cargo aboard be owned or controlled by Defendant Glencore International or any related alter ego company, Plaintiff is entitled to attach Defendant Glencore International's property within the district.

## **PRAYER FOR RELIEF**

103.     Upon information and belief, Defendants have or will soon have assets in the District aboard the Vessel, including but not limited to unpaid freight, bunkers, cargo, and other good and valuable items, and aboard which Glencore International is believed to also have property.

104.     Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Federal Rule of Civil Procedure Rule B attaching any and all assets of Defendants up to the Additional Amount of **$9,135,612.74** for the purpose of obtaining personal jurisdiction over Defendants and to secure the claims in the London Arbitration more fully described above.

105.     Plaintiff also seeks limited discovery, to be served on the Vessel and her master at the time of attachment, which seeks to identify any assets of Defendants aboard or to be laden aboard, specifically including the bills of lading that list the shipper and receiver of the cargo aboard, copies of which are normally carried aboard the vessel.

**WHEREFORE**, Plaintiff prays:

(A)     That process in due form of law issue against Defendants ST Shipping Pte, ST Shipping Inc. and Glencore International citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

(B)     That, since Defendants cannot be found within this district pursuant to Rule B, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all property, tangible or intangible, in whatever form, in the Additional Amount of **$9,135,612.74** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rules B and E, Answer the matters alleged in the Verified Complaint;

(C)     The Plaintiff be authorized to serve limited discovery on the master of the Vessel that assists in the identification of the owner(s) of the cargo and/or other good and valuable property  aboard;

(D)     That this Court retain jurisdiction over this matter through the entry of any judgment or further award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

(E)     That Plaintiff Space Shipping have such other, further and different relief as the Court may deem just and proper in law and equity.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   *s/ Kevin J. LaVie*
        Kevin J. LaVie (#14125)
        Brian D. Wallace (#17191)
        Justin C. Warner (#37349)
        365 Canal Street • Suite 2000
        New Orleans, Louisiana 70130-6534
        Telephone: (504) 566-1311
        Telecopier: (504) 568-9130
        kevin.lavie@phelps.com
        brian.wallace@phelps.com
        justin.warner@phelps.com

ATTORNEYS FOR PLAINTIFF, SPACE
SHIPPING, LTD.

OF COUNSEL:
John G. Kissane
Neil A. Quartaro
Celinda J. Metro
**WATSON FARLEY & WILLIAMS LLP**
250 West 55th Street
New York, New York 10019
(212) 922-2200
jkissane@wfw.com
nquartaro@wfw.com
cmetro@wfw.com

## <u>VERIFICATION</u>

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned notary, duly commissioned and qualified in the state and parish aforesaid, personally came and appeared:

### KEVIN J. LAVIE

who, upon being first duly sworn, did depose and say:

I am an attorney with the law firm of Phelps Dunbar LLP, counsel for Plaintiff Space Shipping Ltd. I have read the foregoing Verified Complaint and know the contents thereof and that same are true to my own knowledge, except to matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The source of my information is documents, records, and other information submitted to me by, or on behalf of, the Plaintiff.

This verification is made by me because Plaintiff is a foreign corporation.


_____
KEVIN J. LAVIE

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 27th DAY
OF OCTOBER, 2017.

_____
NOTARY PUBLIC

24

## <u>VERIFICATION</u>

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned notary, duly commissioned and qualified in the state and parish aforesaid, personally came and appeared:

### KEVIN J. LAVIE

who, upon being first duly sworn, did depose and say:

I am an attorney with the law firm of Phelps Dunbar LLP, counsel for Plaintiff Space Shipping Ltd. I have read the foregoing Verified Complaint and know the contents thereof and that same are true to my own knowledge, except to matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The source of my information is documents, records, and other information submitted to me by, or on behalf of, the Plaintiff.

This verification is made by me because Plaintiff is a foreign corporation.

_____
KEVIN J. LAVIE

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 27th DAY
OF OCTOBER, 2017.

_____
NOTARY PUBLIC

24